FILED
 2015 Sep-18  PM 01:47
U.S. DISTRICT COURT
    N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| STACY ROBIN THACKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 6:14-cv-00691-JHE |
| ) | |
| CAROLYN W. COLVIN, Commissioner of ) | |
| the Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**[1]

Plaintiff Stacy Robin Thacker ("Thacker") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). (Doc. 1). Thacker timely pursued and exhausted his administrative remedies. This case is therefore ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, recommends the Commissioner's decision be **AFFIRMED**.

**I. Factual and Procedural History**

Thacker was forty years old at the time of the Administrative Law Judge's ("ALJ") decision. (Tr. 39, 180). Thacker has a twelfth-grade education and completed specialized training in auto mechanics. (*Id.*). His has past relevant work as a laborer and fast food worker.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 15).

1

(Tr. 37, 154, 180). Thacker worked six to eight months as a laborer and a year and a half as a fast food worker. (Tr. 51-52, 206).

Thacker previously served a year sentence for statutory rape and was arrested in 2007 for failure to register as a sex offender. (Tr. 206). Thacker stated he stopped working because of his incarceration. (Tr. 179). Thacker was incarcerated at the time of his December 12, 2012 hearing. (Tr. 32-59).

Thacker filed his application for a period of disability, DIB, and SSI on August 2, 2011, alleging an onset date of September 27, 2007. (Tr. 128-40, 151). The Commissioner denied Thacker's application, and Thacker requested a hearing before an ALJ. (Tr. 74-83, 88-89). After a hearing, the ALJ denied Thacker's claim on December 26, 2012. (Tr. 17-28). Thacker sought review by the Appeals Council, but it declined his request on February 11, 2014. (Tr. 1-5). On that date, the ALJ's decision became the final decision of the Commissioner. On April 14, 2014, Thacker initiated this action. (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or SSI). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

adequate to support a conclusion." *Id.*   It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

      (1)      whether the claimant is currently employed;
      (2)      whether the claimant has a severe impairment;
      (3)      whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
      (4)      whether the claimant can perform his or her past work; and
      (5)      whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Thacker met the insured status requirements of the Social Security Act through December 31, 2012, and that Thacker has not engaged in substantial gainful activity since September 27, 2007, the alleged onset date. (Tr. 22). At Step Two, the ALJ found the following severe impairments: mood disorder. (*Id.*). At Step Three, The ALJ found Thacker does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23.)

Before proceeding to Step Four, the ALJ determined Thacker's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1).  The ALJ determined Thacker has the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: Thacker can understand, remember, and carry out simple but not detailed or complex instructions; the claimant is able to sustain concentration and attention for two hour periods to complete instructions; the claimant is able to sustain concentration and attention for two hour periods to complete simple and detailed tasks during a regular workday at an acceptable pace and attendance schedule; proximity with others should not be intense; the claimant is able to interact appropriately in casual settings and respond appropriately to constructive instructions; the claimant is able to respond to at least simple, infrequent changes in routine, and the claimant could not have a job that requires reading and writing . (Tr. 25.)

At Step Four, the ALJ determined Thacker is capable of performing his past relevant work as a laborer, explaining this work does not require the performance of work-related activities precluded by his RFC. (Tr. 28).  Accordingly, the ALJ concluded Thacker has not been under a disability, as defined in the Social Security Act, from September 27, 2007, through the date of his decision.  (*Id.*).  Therefore, the ALJ denied Thacker's claim. (*See id.*).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).

The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Thacker contends the ALJ's decision should be reversed and remanded because the ALJ failed to properly evaluate Dr. Renee Myers's Medical Source Opinion ("MSO"). (Doc. 13 at 6). Dr. Renee Myers is a psychologist, who was a one-time consultative examiner in this case. (*Id.*).

### A. In Light of the ALJ's Discussion of Dr. Myers's MSO, the ALJ's Failure to State an Explicit Weight Accorded to It Was Harmless Error

Although an ALJ must evaluate every MSO in the record, the weight he accords to the MSO depends upon, among other things, the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. 20 C.F.R. § 404.1527(c). Medical sources include the following: treating sources, who have provided the plaintiff with medical treatment or evaluation and have an ongoing treatment relationship with him; non-treating sources, who have examined the plaintiff but do not have an ongoing treatment relationship with him; and non-examining sources, who have not examined the plaintiff. *See* § 404.1502. Generally, the opinions of treating sources are entitled to greater deference than those of non-treating sources, and opinions of non-treating sources are entitled to greater deference than those of non-examining sources. *See* 20 C.F.R. § 404.1527(c)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). An ALJ may reject the opinion of any medical source when the evidence supports a contrary conclusion. *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)). Opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e.,

6

that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d).  An ALJ is not required to give any deference or weight to such opinions.

After the ALJ evaluates the MSO, the ALJ must state with particularity the weight given the MSO and the reasons behind that decision. *See Sharfraz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  The purpose of this requirement is to ensure it is not "impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Therefore, courts have found the failure to fully comply with the requirement is harmless error (1) where the omitted opinion evidence is consistent with the ALJ's opinion or another MSO the ALJ expressly relied on, *see McCall ex rel. WM v. Astrue*, No. CIV.A. 2:08CV853-WC, 2009 WL 3211009, at *4 (M.D. Ala. Sept. 30, 2009) (citing *Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008)), or (2) where the ALJ fails to state an explicit weight but, in support of an implicit rejection, articulates reasons supported by the record, *see id.* ("[T]he Eleventh Circuit appears to have recognized that such 'implicit' rejection of medical opinion evidence is viable provided that the ALJ articulates the reasons for affording the omitted opinion less weight and such reasons are supported by the record.") (citing *Snyder v. Comm'r of Soc. Sec.*, 2009 WL 1492653 at *4 (11th Cir. 2009)).  In both types of cases, the rationale for the requirement is met because the reviewing court is provided with the necessary tools to conduct a proper review.  *Cf. Cowart*, 662 F.2d at 735; *McCloud v. Barnhart*, 166 F. App'x 410, 418 (11th Cir. 2006) (rejecting a harmless error argument because the court was "unable to determine from the record what weight the ALJ placed on the GAF score"); *Correll v. Comm'r of Soc. Sec.*, No. 608CV208ORLGJK, 2009 WL 1587404, at *11 (M.D. Fla. June 5, 2009) ("While the ALJ's failure to specify the weight given to Dr. Johnson's opinions and the reasons therefore

constitutes reversible error, the crucial reason for said reversal is not merely formulaic, but rather to insure that substantial evidence supports the ALJ's decision.").

At the request of the Social Security Administration, Dr. Myers performed a consultative psychological evaluation of Thacker on October 14, 2011. (Tr. 205-06). On examination, she determined Thacker was oriented to the day of the week, the date, and the year, but not the month. (Tr. 208). He could answer questions requiring very basic mental addition, but not subtraction, multiplication, and division. (*Id.*). He could also remember two-thirds of items after a delay, but not the governor of Alabama, the President of the United States, or any major national events over the past ten years. (*Id.*). Thacker stated he is in a bad mood all of the time, does not feel like doing anything, and becomes irritable and argumentative when people say anything to him. (Tr. at 207). Dr. Myers noted Thacker was cooperative during the examination. (*Id.*). She diagnosed Thacker with a mood disorder not otherwise specified (possible bipolar), borderline intellectual functioning ("BIF"), and antisocial personality disorder traits. (Tr. 209). She also noted he had a Global Assessment of Functioning ("GAF") score of 50. (*Id.*). Dr. Myers concluded Thacker would likely have difficulty interacting with others and responding to supervision in a work setting, learning new tasks in the workplace, functioning independently, and managing his own finances. (Tr. 208).

Although the ALJ considered Dr. Myers's psychological evaluation and discussed it in his decision, (tr. 24 & 26), he did not use any specific phrase such as "little weight" to describe the weight accorded to it, (*see* tr. 26). Instead, the ALJ set forth the substance of the MSO, discounted it, and gave particular support and rationale for his conclusions. (*Id.*). The ALJ noted (1) Dr. Myers did not administer formal intelligence testing, (2) Thacker's testimony contradicted what he reported to Dr. Myers, and (3) both his twelfth-grade education and

employment history indicate a higher intellectual ability than indicated in the MSO.  (Tr. 26) (citing tr. 206-09, 178-84, & 39-53).  The ALJ also considered Dr. Myers's findings throughout the opinion's discussion of the "Paragraph B" criteria.  (Tr. 24).  It is apparent from the ALJ's decision he considered Dr. Myers's MSO and, and based on clearly articulated reasons, accorded it little weight; therefore, if that conclusion is supported by substantial evidence, the failure to state an explicit weight is harmless error.  *See Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015 (holding the plaintiff had not shown reversible error despite ALJ's failure to state explicit weight accorded to treating physicians' opinions where ALJ had explicitly considered the physician's notes, and substantial evidence supported the ALJ's conclusion those notes did not support a finding of disability); *Razor v. Comm'r of Soc. Sec.*, No. 6:12-cv-958-Orl-DAB, 2013 WL 5854575, at *4 (M.D. Fla. Oct. 30, 2013) ("While the ALJ did not explicitly state that she was weighing the opinions, it is plain that she, in fact, did so.  She set forth the substance of the opinions, credited parts and discounted parts, and gave a particular rationale to support her conclusions.") (citing *Jamison v. Bowen*, 814 F.2d 585, 589 (11th Cir. 1987) ("We do not require that ALJs necessarily cite to particular regulations or cases; nor do we require the use of particular phrases or formulations.")).

   The ALJ's decision to accord little weight to Dr. Myers's MSO is, in fact, supported by substantial evidence.  First, the mental health records support the ALJ's decision to give Dr. Myers's MSO little weight.  Thacker did not receive treatment for his impairment until he was incarcerated, and he traded his medications for other goods in jail. (Tr. 208 & 236).  The ALJ also gave significant weight to the MSO provided by Dr. Steven Dobbs, a state agency psychologist who completed a Psychiatric Review Technique and a Mental Health RFC Assessment of Thacker on November 10, 2011.  (Tr. 27, 218, 232).  Dr. Dobbs found Thacker

had a mood disorder. (Tr. 221). He indicated Thacker had mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 228.) He noted Thacker could understand and remember simple but not complex instructions; sustain attention and concentration for two-hour periods during a regular workday at an acceptable pace and attendance schedule; interact appropriately in casual settings and respond appropriately to constructive instructions; and respond to at least simple, infrequent changes in routine. (Tr. 234). Dr. Dobbs also noted proximity to others should not be intense. (*Id.*). The ALJ's RFC assessment takes Dr. Dobb's MSO into account by limiting Thacker to tasks that do not require him to read or write, understand or remember complex instructions, or be in intense proximity with others. (Tr. 25). Dr. Dobb's MSO is more consistent with the record as a whole than Dr. Myers's MSO because it takes into account that, while Thacker complained of emotional issues, the record indicates his mental incapacities do not rise to the level of being totally disabling.

In assessing Thacker's mental capacity, the ALJ also relied on Thacker's testimony and a function report Thacker completed in August 2011. Thacker reported he experiences anxiety being around people and prefers to be alone, but testified he got along "good" with his cellmate and had a roommate and a girlfriend before he was incarcerated. (Tr. 51, 168, 207). He reported he does not get along well with authority figures, but testified that he got along with guards in jail. (Tr. 53 & 168). Thacker reported he has difficulty paying attention for any length of time, but he enjoys watching television and did not indicate that he has any difficulty following a program. (Tr. 166-67). The ALJ determined these inconsistencies weighed against finding Thacker disabled. The ALJ's credibility determination also supports the decision to give little weight to Dr. Myers's MSO.

10

Lastly, Dr. Myers did not rely on formal intelligence testing but, other than a brief cognitive assessment, appears to have relied primarily on Thacker's subjective statements. *See Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159-60 (11th Cir. 2004) (affirming a district court finding the ALJ's decision to discount opinion evidence was supported by substantial evidence where the ALJ relied, in part, on the fact the opinion appeared to be based primarily on the plaintiff's subjective complaints of pain).

**B.  Thacker's Other Cursory Arguments Also Fail to Establish Reversible Error**

Thacker also contends the ALJ misinterpreted Dr. Myers's GAF score and Thacker's education and work histories, suggesting these misinterpretations were "subterfuge[s]" to, for some reason, avoid giving a weight to Dr. Myers's opinion.  (Doc. 13 at 7-8).  As already addressed above, the ALJ clearly accorded little weight to Dr. Myers's overall opinion; however, to the extent Thacker intends these as additional assignments of reversible error, his arguments fail.

First, Thacker does not explain at all in what relevant ways graduation and a certificate of completion of "educable mentally retarded classes" are different in the context of supporting a finding of "higher intellectual ability than was indicated by Dr. Myers." (Doc. 13 at 7-8).  Even Dr. Myers referred to Thacker as having "*graduated* from TW Martin High School with a certificate of completion at age 21." (Tr. 207) (emphasis added).  If there is a relevant difference creating reversible error, Thacker's argument fails to demonstrate it.

Second, Thacker notes the ALJ "incorrectly stat[es] that a GAF of 50 represents moderate symptoms when, in fact, it indicates serious symptoms or serious impairment according to the DSM-IV."  (Doc. 13 at 7).  The Commissioner does not dispute this error but argues it is harmless.  (Doc. 14 at 13).  "A GAF score is a subjective determination based on a clinician's

judgment of a person's overall level of functioning." *Williams v. Comm'r of Soc. Sec.*, No. 2:13-CV-00527-FTM-29, 2014 WL 4809511, at *9 (M.D. Fla. Sept. 26, 2014). GAF scores of 41-50 indicate "*serious* symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any *serious* impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." *Holliday v. Astrue*, No. 5:12CV143-CAS, 2013 WL 105322, at *7 (N.D. Fla. Jan. 8, 2013) (citing the DSM-IV-TR at 34). GAF scores of 51-60 indicate "*moderate* symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or *moderate* difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)." *Id.*

Although a panel of the Eleventh Circuit has remanded a case when it was unclear how much weight the ALJ accorded to a misinterpreted GAF score, the apparent concern in that case was that the ALJ's denial of benefits was based on a misunderstanding of the evidence. *See McCloud v. Barnhart*, 166 Fed. App'x, 410, 418 (11th Cir. 2006) ("With the knowledge that a GAF score of 45 reflects severe impairments, the ALJ should determine what, if any, weight to place on the score."). *See also Bailey v. Astrue*, No. 309-CV-383-J-JRK, 2010 WL 3220302, at *8 (M.D. Fla. Aug. 13, 2010) (distinguishing *McCloud* based on this rationale). Here, however, it is clear the ALJ did not rely on his mistaken interpretation of Dr. Myers's GAF score.

Without further reference to the GAF score, the ALJ addressed Dr. Myers's findings, in conjunction with the other evidence, and concluded the evidence "indicat[ed] a higher intellectual ability than was indicated by Dr. Myers." (Tr. 24 & 26). Specifically, the ALJ noted that Thacker had lived with a roommate, had a girlfriend, and got along with the guards while he was incarcerated, indicating only moderate difficulties in social functioning, (tr. 24); that Thacker's apparent ability to follow television programs without difficulty and his performance

during Myers's evaluation indicated only moderate difficulties with concentration, (*id.*); and that Thacker could read and write short lists, had finished his high school education, and maintained employment for at least six months at a time, indicating higher intellectual ability than Myers had concluded, (tr. 26).

There is nothing indicating the ALJ's determination would have changed had he correctly stated the meaning of Myers's numeric statement of her conclusions (in the form of a GAF score), when he had already stated his reasons for rejecting the verbal form of those conclusions. *See Caldwell*, 261 F. App'x at 190 ("When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.").

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Thacker's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED** and this action is due to be **DISMISSED WITH PREJUDICE.**

A separate order will be entered.

DONE this the 18th day of September 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE